OPINION
{¶ 1} Plaintiff-appellant Ken H. Kohart ("Kohart") brings this appeal from the judgment of the Court of Common Pleas of Paulding County finding in favor of defendants-appellees Jonathan A. Berger ("Berger") and Paulding County Hospital ("PCH").
 {¶ 2} On January 5, 1996, Kohart went to his family physician, Dr. Gray ("Gray"), to have stitches removed from his hand. While there, Kohart's mother requested that Gray look at Kohart's back because she noticed a bump between Kohart's shoulder blades. Gray examined Kohart's back and noticed increased thoracic kyphosis.[1] Gray then ordered spinal x-rays be taken to determine the cause of the kyphosis and whether Kohart should be referred to a specialist. The x-rays were taken on January 9, 1996. On January 10, 1996, Berger, a radiologist, evaluated the films and wrote a report for Gray. The report indicated a mild scoliotic[2] deformity of the lower portion of the thoracic spine and no significant kyphotic deformity. Gray interpreted the report as finding no problems.
 {¶ 3} On February 19, 1996, Dr. Saxton ("Saxton"), a chiropractor, examined Kohart for complaints of back pain. During the examination, Saxton became concerned about kyphosis. Saxton then suggested that x-rays be taken, but was informed that they had just been done. Saxton then received a copy of Berger's report and interpreted it to state that Kohart's spine was normal. Saxton relied upon this report and proceeded to attempt to treat Kohart.
 {¶ 4} On September 15, 1997, Gray again saw Kohart for a severe sinus infection. When the infection worsened, Kohart was hospitalized and Gray ordered chest x-rays to determine if pneumonia had begun. These chest x-rays indicated that Kohart had wedging[3] of the vertebrae and that the kyphosis had worsened. Eventually Kohart was seen by a specialist and diagnosed with Scheuermann's Disease, which causes severe kyphosis. Due to the progression of the disease in Kohart, the only option was surgery. The surgery was performed in Ft. Wayne, Indiana and, unfortunately, resulted in Kohart being paralyzed from the waist down.
 {¶ 5} On June 16, 2000, Kohart filed a complaint against Berger, PCH, Gray, Dr. Steven Hossler ("Hossler"), and Saxton. The complaint alleged that the defendants were negligent by failing to promptly diagnose his condition, thus worsening his kyphosis and leading to permanent injury. Gray and Hossler were subsequently dismissed. From March 18, 2002, until March 25, 2002, a jury trial was held. The jury then returned verdicts in favor of Berger, PCH, and Saxton. The interrogatories answered by the jurors indicated that they did not find the defendants to be negligent. Kohart then filed motions for a judgment notwithstanding the verdict and for a new trial. Both motions were denied on April 28, 2002. On May 29, 2002, Kohart filed this appeal claiming the following assignment of error.[4]
 {¶ 6} "The jury's verdict was against the manifest weight of the evidence where there was absolutely no testimony by any witness, including [Berger], that he met the standard of care and where every expert identified on the x-ray the information [Berger] failed to identify and report which caused the delayed diagnosis of [Kohart's] increasing kyphotic deformity and the need for subsequent surgery after which [Kohart] was paraplegic."
 {¶ 7} In order to reverse a verdict as against the manifest weight of the evidence, a reviewing court must review the entire record, weight the evidence and all inferences, consider the credibility of the witnesses, and determine whether, in resolving the conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice. State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541. The power to grant a new trial should be exercised only in those exceptional cases to prevent the miscarriage of justice. Id.
 {¶ 8} In this case, Saxton testified that he relied upon Berger's report and that he would have expected Berger to report the wedging. Gray also testified that he relied upon Berger's report and that he understood the report to state that the x-ray showed a normal spine with no problems.
 {¶ 9} Berger testified that he knew how to evaluate whether a spine was normal. He also testified that he never saw Gray's order to evaluate for kyphosis, but believed that he was primarily to be evaluating the x-ray for scoliosis as was written on the requisition. Berger concluded his testimony by stating that the January 9, 1996, x-ray showed a spine within the normal ranges for kyphosis and did not indicate a significant problem with wedging.
 {¶ 10} Kohart then presented the testimony of the following experts. Antoni Goral ("Goral"), an orthopedic surgeon, testified that he saw wedging on the x-ray and the there was mild kyphosis. In addition, Goral testified that Berger did not meet the standard of care because he failed to report the mild kyphosis and the wedging of one of the vertebrae. He opined that the failure of Berger to report these findings was a contributing factor to Kohart's paralysis because it reduced the chance that bracing would have been an effective alternative to surgery.
 {¶ 11} Kohart then presented the testimony of Myron Marx ("Marx"), a radiologist. Marx testified that the 1996 x-ray clearly showed abnormal kyphosis and wedging. Although the kyphosis was mild, Marx believed that it should have been reported along with the wedging. The failure to do so fell below the standard of care for a radiologist according to Marx.
 {¶ 12} Finally, Kohart presented the expert testimony of Eric Bourekas ("Bourekas"), a radiologist. Bourekas testified that the 1996 x-ray showed mild kyphosis and some wedging in his opinion. However, Bourekas also testified that the determination of what is abnormal is discretionary with the doctor and that not all doctors would agree with his determination. Bourekas testified that he would have reported the wedging and the mild kyphosis, but he would not fault Berger's judgment in determining the conditions to be normal and for not reporting them.
 {¶ 13} Gregory Graziano ("Graziano"), an orthopedic surgeon, testified on behalf of Saxton. During his testimony, Graziano stated that he believed Berger should have reported the wedging and the mild kyphosis. However, Graziano could not state that Berger had not met the standard of care for radiologists because he believed that the x-ray was not clearly abnormal and that it was a judgment call.
 {¶ 14} Given the testimony of all of the professionals and the experts, the jury members had contradictory evidence before them as to whether Berger met the standard of care for a radiologist. The jury could have chosen to believe that Berger made a judgment call that the spine was not abnormal based upon the information before him. Even though it might have been useful for Saxton and Gray to know about the wedging and the mild kyphosis, we cannot say that the jury lost its way in deciding that Berger was not negligent. Thus the assignment of error is overruled.
 {¶ 15} The judgment of the Court of Common Pleas of Paulding County is affirmed.
Judgment affirmed.
 SHAW, P.J. and WALTERS, J., concur.
[1] Kyphosis is defined as a deformity of the spine characterized by extensive flexion. Stedman's Concise Medical Dictionary, (2 Ed. 1994) 545.
[2] Scoliosis is defined as a lateral curvature of the spine. Stedman's Concise Medical Dictionary, (2 Ed. 1994) 912.
[3] Saxton defined wedging during the trial as when the front of a vertebrae becomes smaller than the rear of the vertebrae. Tr. Vol. 2, 263. All of the medical witnesses agreed with this definition.
[4] This court notes that the only portion of the verdict challenged was the verdict in favor of Berger. No error is assigned to the verdicts in favor of PCH or Saxton.